UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ASHLEY C. SCOTT,

      Plaintiff,

v.                                                          Case No. 3:12-cv-494-BJD-MCR

UNITED STATES OF AMERICA,
*et. al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff Ashley Scott's Second

Motion for Reasonable Administrative and Litigation Fees and Costs

("Motion") (Doc. 278), and the Government's response in opposition thereto

("Response") (Doc. 290).  Upon consideration, and for the reasons stated

herein, the undersigned **RECOMMENDS** that the Motion be **DENIED**.

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed.R.Civ.P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

## I.    Background

Plaintiff initiated this action on April 30, 2012, by filing a two-count

Complaint (Doc. 1) against the Government for refunds for tax years 2004,

2005, 2006, and 2007 (count I), and against Michael A. Jenkins, the former

general manager at Scott Air, for right to contribution (count II).  Defendant

Jenkins filed a Motion to Dismiss on May 21, 2012.  (Doc. 6.)  The

Government responded to the Complaint by filing a counter-claim and a

third-party complaint for the full amount owed against Scott and her father,

Tyrene Scott, on July 27, 2012.  (Doc. 13.)  Tyrene Scott failed to respond to

the Government's third-party Complaint, and judgment was entered against

him in the amount of $726,347.90.  (Doc. 40.)  The Court dismissed Jenkins

and granted the Government's partial summary judgment motion, holding

that Scott was a responsible party for all thirteen tax quarters and was

willful with respect to the 2007 quarters, but leaving the issue of whether

Scott was willful in the earlier tax quarters for the jury's determination.

(Docs. 16, 47.)

The first jury trial commenced on August 4, 2014, and concluded on

August 7, 2014, with the jury finding that Scott willfully failed to pay over

the trust fund taxes for six of the nine quarters at issue: December 31, 2004,

March 31, 2005, September 30, 2005, December 31, 2005, September 30,

2006, and December 31, 2006.  (*See* Doc. 99.)  Judgment was entered against

Scott in the amount of $619,830.52 (Doc. 100), and Scott subsequently

appealed the Court's final judgment.  (Doc. 102.)  On June 14, 2016, the

Eleventh Circuit issued its Opinion, affirming in part, and vacating and

remanding in part the Court's final judgment.  Holding that the case was "too

close to be decided on summary judgment," the court reasoned that a

reasonable jury could find that Scott did not have any authority to decide

which bills were paid.  *Scott v. United States*, 825 F.3d 1275, 1281 (11th Cir.

2016).  However, the court further noted that "there [was] also evidence in

the record that supports the Government's argument that Scott was a

responsible person."  *Id.*

The second jury trial commenced on February 6, 2017, and by February

10, 2017, the jury reached a verdict, finding Scott was a responsible person

for the September 30, 2004, December 31, 2006, and June 30, 2007 tax

quarters.  (Doc. 159.)  Judgment was entered against Scott in the amount of

$237,490.01.  (Doc. 161.)  On March 24, 2022, both the Government and Scott

filed motions for judgment as a matter of law (Docs. 169, 170), which the

Court denied.  (Doc. 174.)  Scott again appealed the Court's decision, arguing

that (1) there was insufficient evidence supporting the jury's verdict that she

was a responsible person for three payroll tax quarters; (2) the Court plainly

erred in failing to provide Scott's proposed jury instruction regarding the

legal authority of a corporate secretary under Florida law; and (3) the Court

erred in refusing to let her testify about Scott Air's corporate bylaws.  On appeal, the court concluded that this Court's decision to exclude Scott's proposed jury instructions regarding her legal authorities and duties as the company's corporate secretary was plain error, but expressed no position on whether the evidence was sufficient to find Scott was a responsible person. *Scott v. United States, Treasury Dep't, Internal Revenue Serv.*, 776 F. App'x 612 (11th Cir. 2019).

On April 28, 2021, a third and final jury found Scott to be a responsible person for two of the three tax periods at issue, September 30, 2005, and December 31, 2006.  (*See* Doc. 270.)  An Amended Judgment was entered on May 25, 2021, finding Scott liable for $165,641.74, as of February 6, 2017, for the two Trust Fund Recovery Penalty ("TFRP") quarters.  (Doc. 279.)  On June 4, 2021, Scott filed her Renewed Motion for Judgment as a Matter of Law, or Alternatively, Motion for New Trial.  (Doc. 287.)  On August 11, 2021, the Court denied Scott's motion (Doc. 293), which Scott subsequently appealed.  On October 31, 2022, the Eleventh Circuit issued its Opinion, affirming the Court's denial.  *Scott v. United States*, 2022 WL 16547995, at *5 (11th Cir. Oct. 31, 2022).  Thus, after over a decade of litigation, three jury trials, and three appeals, the undersigned discusses the parties' arguments and its recommendation regarding the present Motion for an award of fees below.

## II.   Discussion

### A.   The Parties' Positions

On May 21, 2021, Scott filed the instant Motion, requesting an award

of reasonable administrative and litigation costs from Defendant.  (Doc. 278.)

Plaintiff raises two key issues: (1) whether Scott's Qualified Offer, effective

October 17, 2012, entitles her to an award of administrative and litigation

fees and costs; and (2) whether the Government was substantially justified

between December 10, 2008 (date of Letter 1153) and October 17, 2012 (date

of Qualified Offer).  (*Id.* at 5.)  Additionally, Scott submits, and the

Government concedes, that her net worth does not exceed $2 million and that

she exhausted her administrative remedies.  (*See id.* at 7; *see also* Doc. 290 at

3, n. 1.)

Next, Scott argues that "the Internal Revenue Service failed to follow

its own Policy Statement 5-14 (formerly P-5-60)," and therefore, the

Government was presumably not substantially justified.  (Doc. 278 at 7.)

Further, Scott argues that the "[Government] also failed to follow other parts

of its own Internal Revenue Service Manual."  (*Id.* at 8.)  Scott's argument

continues, in relevant part, as follows:

> There is a further exception whereby [the] United States is
> not entitled to argue it was substantially justified if a taxpayer
> made a "Qualified Offer" under 26 U.S.C. § 7430(g).  *See* 26
> U.S.C. § 7430(c)(4)(E).  As noted, as of October 17, 2012, the
> United States was served with a Qualified Offer for each of the

> thirteen (13) quarters.  Accordingly, the United States is precluded from asserting it was substantially justified with respect to all eleven (11) quarters for which Scott was determined not liable.
>
> The amount in controversy was the assessed Trust Fund Recovery Penalty amount of $713,710.39 (not including interest). Since the juries found that Scott was only liable for $135,041.61 (not including interest), she substantially prevailed with respect to the amount in controversy, being absolved of 81.08% of the TFRP tax amount assessed.

(*Id*. at 9.)

As to the Qualified Offer, Scott argues that because the Government did not reject or accept her offer within the statutory period, "the [G]overnment's steadfast prosecution of its case made the litigation costs an important aspect of this case." (*Id*. at 10.)

For its part, the Government responds that Scott is not entitled to an award of reasonable fees and costs because she was not a prevailing party under the qualified offer rule and because the United States' position was substantially justified. (Doc. 290.) The Government contends that Scott's qualified offer was a single offer, and not multiple offers for the various tax periods. (*Id*.) The Government also submits that the IRS's investigation was appropriate and that its determination that Scott was liable under section 6672 was justified. (*Id*. at 14-17.)

Through the instant Motion, Plaintiff seeks fees and costs for her efforts both in this Court and during the administrative proceedings.

6

_

Plaintiff so moves pursuant to 26 U.S.C. § 7430.  (*See* Doc. 278 at 1.)  The

undersigned summarizes the applicable statutory framework, and then

analyzes whether Scott was a prevailing party and whether the

Government's position was substantially justified in turn below.

### B.    Standard

Congress enacted 26 U.S.C. § 7430 "to deter abusive actions or

overreaching by the [IRS] and to enable taxpayers to vindicate their rights

regardless of their economic circumstances." *Cooper v. United States*, 60 F.3d

1529, 1530 (11th Cir. 1995) (quoting *Weiss v. Comm'r of Internal Revenue*, 88

T.C. 1036, 1041, 1987 WL 49313 (Tax Ct. 1987)).  To be eligible for an award

of attorneys' fees under § 7430, three requirements must be satisfied.  First, a

claimant must have exhausted all administrative remedies available within

the IRS before commencing a civil proceeding.  26 U.S.C. § 7430(b)(1).

Second, the claimant must prove that she is a "prevailing party."  26 U.S.C.

§§ 7430(a), 7430(c)(4)(A).  Finally, a claimant must show that the requested

award constitutes reasonable litigation or administrative costs.  26 U.S.C. §§

7430(a), 7430(a)(2), 7430(c)(1), and 7430(c)(2).  Since § 7430 constitutes a

waiver of the government's sovereign immunity, it must be strictly construed.

*Ardestani v. Immigr. and Nat. Serv.,* 502 U.S. 129, 137 (1991).  Accordingly, a

party seeking attorney's fees and costs under § 7430 must strictly comply

with the statutory requirements.  *In re Klauer*, 362 B.R. 31, 34 (Bankr. M.D. Fla. 2006).

"To qualify as a prevailing party, a taxpayer has the burden to establish that the IRS's position in the proceeding was not substantially justified."  *Cooper*, 60 F.3d 1529, 1531.  Under this requirement, a claimant must prove that the IRS's position was not "justified to a degree that could satisfy a reasonable person" or had no reasonable basis both in law and fact."  *Id*.  That the United States loses or concedes an issue does not establish that its position was not substantially justified.  *Pierce v. Underwood*, 487 U.S. 552, 569 (1988).

However, there is an exception if the United States established that its position was substantially justified.  Pursuant to section 7430(c)(4)(B), a taxpayer shall not be treated as a prevailing party, "if the United States established that the position of the United States in the proceeding was substantially justified."  26 U.S.C. § 7430(c)(4)(B).  The term "substantially justified" means "justified to a degree that could satisfy a reasonable person" or having a "reasonable basis both in law and fact."  *Pierce*, 487 U.S. 552 at 565.

### C.   Analysis

### i.   Scott is Not a Prevailing Party Under § 7430

First, the undersigned concludes that Scott was not a prevailing party

under § 7430.  Under § 7430(c)(4)(A), a prevailing party is defined as any

party who has "substantially prevailed with respect to the amount in

controversy" or "the most significant issue or set of issues presented."  Scott

maintains that "regardless of whether the Government's position was

substantially justified," she is automatically entitled to an award of future

ligation fees and costs because she substantially prevailed as to the amount

in controversy and the issues presented, and because she sent a Qualified

Offer.[2]  (*See* Doc. 278 at 10.)  But Scott's argument and reading of the statute

is not persuasive.

The general rule is that a prevailing party is one that has substantially

prevailed with respect to the amount in controversy, or with respect to the

---

[2] A Qualified Offer is defined in section 7430(g)(1) as a written offer which:
  (A)  is made by the taxpayer to the United States during the qualified offer
       period;
  (B)  specifies the offered amount of the taxpayer's liability (determined
       without regard to interest);
  (C)  is designated at the time it is made as a qualified offer for purposes of
       this section; and
  (D)  remains open during the period beginning on the date it is made and
       ending on the earliest of the date the offer is rejects, the date the trial
       begins, or the 90th day after the date the offer is made.

26 U.S.C. § 7430(g)(1).

most significant issue or set of issues presented.  26 U.S.C. § 7430(c)(4)(A).

However, immediately following this language, § 7430(c)(4)(B) provides an

exception to the general rule, which states that, "[a] party shall not be

treated as the prevailing party . . . if the United States establishes that the

position of the United States . . . was substantially justified.  If the Court

were to take Scott's argument at face value, it would essentially be ignoring a

critical subsection of the tax statute that provides an exception to the general

rule.  Such a reading is not proper.  *See Jean v. United States*, 396 F.3d 449,

455 (1st Cir. 2005) (ruling that even when the "prevailing party"

requirements are met, an individual will not be treated as a prevailing party

if the United States established that its position in the proceeding was

substantially justified).

In support of this argument, Scott maintains that her October 17, 2012

Qualified Offer of $3,250.00 for all thirteen tax quarters at issue, which the

Government neither accepted nor rejected, proves that the Government

lacked substantial justification in going to trial on eleven of the thirteen

quarters.  (Doc. 278 at 11.)  On the other hand, the Government argues that

Scott's Qualified Offer contained a single offer, instead of thirteen separate

offers as Scott asserts.  (*See* Doc. 290 at 4-5.)  In her letter, Plaintiff writes:

> This letter constitutes our second or follow-up "qualified offer" as
> defined in Code Section 7430(g)(1) in that:

1. It is being made by the Taxpayer-Plaintiff, Ashley C. Scott, to the United States during the qualified offer period;
2. It specifies the offered amount of the Taxpayer-Plaintiff's tax liability (determined without regard to interest);
3. It is designated at the time it is made as a "qualified offer" for purposes of Internal Revenue Code Section 7430;  . . .

(Doc. 278-4 at 2.)  The letter continues with a table that outlines Plaintiff's liability of $250.00 for each tax period with a combined total of $3,250.00. (*See id.* at 3.)

Upon consideration, the undersigned finds that Plaintiff cites no persuasive authority in support of her argument that the Government lacked substantial justification in allowing her qualified offer to lapse and going to trial on eleven of the thirteen quarters.  Indeed, this Court is unaware of any authority that supports such a ruling.  Concerning qualified offers, the standard is whether the ultimate judgment against the plaintiff is equal to or less than the qualified offer to the United States.  *See* U.S.C. § 7430(2)(E)(i). The regulations also define the word "judgment" to mean "the cumulative determinations of the court concerning the adjustments at issue and litigated to a determination in the court proceeding."  Treas. Reg. § 301.7430–7(a), Proced. & Admin. Regs.  A cumulative comparison of Scott's qualified offer ($3,250.00 or $250.00 per quarter) and the ultimate judgment ($165,641.74) undoubtedly reveals a significant difference—$162,391.74.  Scott's reading of the statute defies logic.  Had the Government accepted her offer of $3,250.00,

or even $500.00 for two of the thirteen tax quarters that Scott was

determined liable, the Government would not have successfully secured a six-

figure judgment towards the ultimate liability.

Moreover, the Journal of Taxation provides the following guidance

regarding qualified offers:

> The formulation of the offer, particularly the amount of tax to be offered, involves a balancing among the taxpayer's desire to have the offer accepted, the taxpayer's desire to receive an award of attorney's fees, and the result the taxpayer anticipates would be achieved at trial. If the taxpayer is contesting an asserted deficiency, the offer could range from a zero deficiency up to the deficiency asserted by the Service. If the taxpayer is seeking a refund of an overassessment, the offer could range from a zero refund up to the full amount being sought.
>
> **Where a deficiency is involved, a low offer (i.e., a low amount of tax offered to be paid by the taxpayer) will decrease the chance that the IRS might accept it, and it also will decrease the chance that the taxpayer might receive a better result at trial**. By contrast, a high offer will increase the chance that the IRS will accept it, while also increasing the taxpayer's odds of doing better at trial.
>
> In some cases, such as a valuation case, the result that is likely to be obtained at trial may be difficult to predict, and many different results might be possible. In other cases, such as a case involving a single legal question, the only two possible results might be all or nothing. In multi-issue cases, the situation will be even more complex. If the taxpayer believes that the result at trial is likely to be a zero tax liability, a qualified offer to accept a tax liability of a very low amount ($100 or $1,000, for example) might be appropriate.

Philip N. Jones, *Final Regs. On Qualified Offers: Making It Easier to Make IRS Pay Attorney's Fees*, 100 J. Tax'n 111, 116, 2004 WL 214463, 9 (emphasis added).

Furthermore, "the taxpayer must be able to later demonstrate with accuracy whether the result obtained at trial was equal to or better than the result described by the offer." *Id*. at 15.

Here, Plaintiff's qualified offer argument fails to demonstrate that the ultimate result obtained at trial was equal to or better than the result presented in her qualified offer.  Scott's reading of the statutory language invites this Court to either make a quarter-by-quarter determination of the Government's justification or make a sweeping award of fees and costs because the third and final jury trial in this case resulted in liability significantly less than what the Government initially claimed.  As this is not what section 7430 requires, the Court declines such invitation.  Although the Court may be inclined to agree that Scott prevailed concerning the amount in controversy, she cannot be considered a prevailing party because the Government's position was substantially justified as discussed below.

## ii.    The Government's Position Was Substantially Justified

Next, the undersigned concludes that the Government's position was substantially justified.  As an initial matter, the Court resolves the argument that the Government's position was presumably unjustified because it

13

allegedly violated its Policy Statements and Internal Revenue Manual during

the initial investigation into Scott Air's unpaid payroll taxes.  There is a

presumption of no justification if the IRS did not follow certain published

guidelines.  *See* 26 U.S.C. § 7430(c)(4)(B)(ii).  Section 7430(c)(4)(B)(iv)

provides that the term "applicable published guidance" means:

> (I)    regulations, revenue rulings, revenue procedures,
>        information releases, notices, and announcements, and
> (II)   any of the following which are issued to the taxpayer:
>        private letter rulings, technical advice memoranda, and
>        determination letters.

26 U.S.C. § 7430(c)(4)(B)(iv).

Here, Plaintiff asserts the IRS failed to follow Policy Statement 5-14

(formerly P-5-60) and certain provisions within the Internal Revenue Manual

("IRM").  (Doc. 278 at 7-8.)  The Government responds that policy statements

and the IRM are excluded from the statutory definition of "appliable

published guidance."  (Doc. 290 at 15-16.)  The Court agrees with the

Government.  Making a conclusory statement that the Defendant "failed to

follow its own Policy Statement 5-14 (formerly P-5-60)," and then providing

the relevant policy statement language, Plaintiff does little to spell out her

argument that the IRS failed to follow the policy statement purportedly at

issue.  (*See* Doc. 278 at 7-8.)  Furthermore, noncompliance with the IRM does

not render an action of the IRS invalid and procedures in the IRM are

intended to aid in the internal administration of the IRS and do not confer

rights on taxpayers.  *In re Matter of Carlson*, 126 F.3d 915, 922 (7th Cir. 1997).  Accordingly, the accusation that the IRS failed to locate Scott Air's by-laws and corporate minutes book and use the description of the duties of the respective officers as evidence of duties and responsibilities did not trigger a rebuttable presumption of no substantial justification.

Turning to whether the Government's position was substantially justified, the undersigned must first discuss the statutory framework under which the IRS may assess trust fund recovery penalties against an individual.  26 U.S.C. § 6672 imposes liability for unpaid federal withholding taxes on corporate personnel who (1) have the corporate responsibility to collect, truthfully account for, and pay over the taxes; and (2) willfully fails to do so.  26 U.S.C. § 6672.  Responsibility is a "matter of status, duty and authority, not knowledge."  *Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir. 1987).  The Eleventh Circuit interprets the statute broadly.  *Smith v. United States*, 894 F.2d 1549, 1553 (11th Cir. 1990).

Here, the issue is whether the Government may still be "substantially justified" in its position that Scott was a responsible person after obtaining a less than fully favorable jury verdict.  For guidance on this issue, the undersigned looks to *Cooper v. United States*, 60 F.3d 1529 (11th Cir. 1995).  In *Cooper*, the court held that the plaintiff established that the IRS was not substantially justified in maintaining its position that he was liable under

15

section 6672 for the company's failure to remit employment taxes. *Cooper*, 60 F.3d at 1532. The court based its ruling on the fact that the IRS knew that the plaintiff was not involved in the operation or management of the company and that there was no evidence that he had any knowledge of failure or risk of failure to remit the employment taxes. *Id.* Ultimately, the court found that "[t]he IRS engaged in abusive actions and overreached its authority by failing to properly investigate [the plaintiff's] potential liability before assessing him with a tax penalty under § 6672." *Id.*

This case is distinguishable from *Cooper*. Here, the facts known to the IRS reasonably supported its position that Scott was a responsible person. In *Cooper*, the IRS's initial investigation revealed uncontroverted testimony that the plaintiff was not responsible for the operation or management of the restaurant. In the case at bar, the IRS's initial investigation revealed at least some evidence that Scott was a responsible person who willfully failed to pay Scott Air's payroll taxes for the quarters at issue. Namely, the evidence included, *inter alia*, that Scott was the corporate secretary, she handled the company's payroll, she received numerous company benefits, such as vehicles, cell phones, and vacations, and upon learning of the company's financial troubles, she loaned her father $20,000. Additionally, while the Motion alludes to violations of policy statements and the IRM, there is nothing in the

16

record that leads this Court to conclude that the IRS engaged in abusive actions and overreached its authority.

Additionally, Scott's argument that the jury verdict concluding that she was not a responsible person for eleven out of thirteen tax quarters "negates or neutralizes the United States' ability to assert any defense" is flawed. (*See* Doc. 278 at 4.)  First, Scott does not even attempt to meet her burden that the Government was not substantially justified. *See Grant v. Comm'r of Internal Revenue*, 103 F.3d 948, 952 (11th Cir. 1996) ("The taxpayers bear the burden of proving that the IRS's position was not substantially justified in law and in fact.")  Second, the mere fact that the Government went to trial and did not receive a fully favorable outcome does not equate to a less than substantially justified position.  "Although a jury's verdict is relevant as to whether the government's position is substantially justified, it is not determinative, especially where the jury's finding is based on the preponderance of the evidence, as in this case." *See Ferguson v. United States*, 343 F. Supp. 2d 787, 797 (S.D. Iowa 2004); *Wilfong v. United States*, 991 F.2d 359, 367 (7th Cir. 1993) ("We agree that the jury's verdict is relevant and that it should [be] considered by the district court.").

In light of the evidence gathered at the administrative level and presented at trial, the record does not support the conclusion that the Government was not substantially justified in its litigation position.  Because

17

liability could lie with Scott even given her seemingly limited authority to issue checks, and because there was a legitimate question as to the extent of Scott's decision-making authority to make tax and debt payments, the Government was not unreasonable in taking the position that Scott was a "responsible person" under section 6672.  As the Eleventh Circuit soundly reminds us, cases in this circuit addressing what constitutes responsibility are necessarily fact-intensive.  *Scott v. United States*, 825 F.3d 1275, at 1279. The Eighth has also echoed a similar sentiment when analyzing whether the government was substantially justified under section 7430.  *See Bale Chevrolet Co. v. United States*, 620 F.3d 868, 873 (8th Cir. 2010) (noting that where a case involves primarily factual questions, the government's position has been found to be substantially justified).

Additionally, although Scott adamantly portrays herself as a layperson who had no understanding of complex tax documents such as Forms 941, she endorsed those forms and held herself out to be the company's accounting manager.  As such, the Government indicated that it determined that Scott was a responsible party who willfully failed to pay under 26 U.S.C. § 6672 based on the following facts:  Scott held corporate office; she had signatory control over Scott Air's sole checking account; she had the authority to sign checks to vendors and other creditors, including the IRS; besides her father, Scott was the only other contact with the company's accountant; she served

18

largely in the role of the company's bookkeeper; her 2004 federal income tax

return reported her occupation as "Accounting Manager"; two Form 941

returns signed by Scott (one for the third quarter 2005, and the other for the

fourth quarter 2006) reported outstanding balances in the amounts of

$70,244.00 and $57,323.00.  Taken as a whole, these facts provide sufficient

support that the Government's position was "justified to a degree that could

satisfy a reasonable person" or had a "reasonable basis both in law and fact."

*In re Rasbury*, 24 F.3d 159, 168 (11th Cir. 1994).

Furthermore, on appeal from this Court's entry of partial summary

judgment in favor of the Government, the Eleventh Circuit did not find that

the Government's case was meritless.  Instead, the Eleventh Circuit

ultimately determined that the case was "too close to be decided on summary

judgment," and that the jury could return a verdict in either party's favor.

*Scott v. United States*, 825 F.3d at 1281.  The fact that the jury chose to give

greater weight to Scott's evidence relative to some of the tax quarters at issue

does not mean that the jury considered the Government's evidence to be

meritless.  Indeed, the Government prevailed regarding ten out of thirteen

tax quarters as to willfulness and two tax quarters as to responsibility.

## III.    Conclusion

In sum, Scott is not entitled to an award of administrative and

litigation fees and costs because she was not a prevailing party under § 7430

19

and because the Government's position was substantially justified.  The undersigned is not persuaded by Scott's qualified offer argument, nor is the undersigned persuaded that the Government had "absolutely no probative evidence" to proceed with trial.  Both this Court and the Eleventh Circuit dispelled this notion time and time again.  *See Scott v. United States*, 825 F.3d at 1281 (holding that the case was "too close" to be decided on summary judgment); *Scott v. United States*, No. 21-13098, 2022 WL 16547995, at *4 (11th Cir. Oct. 31, 2022) (rejecting Scott's argument that no rational trier of fact could find that Scott was a responsible person).  As such, the undersigned's recommendation that Scott is not entitled to administrative fees and costs forecloses any discussion as to the reasonableness of the requested amount.

Accordingly, it is respectfully **RECOMMENDED** that:

The Motion (**Doc. 278**) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida, on January 25, 2023.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Brian J. Davis
United States District Judge

Counsel of Record